HOBART DIXON, Plaintiff, v. NORTHWESTERN PUBLISHING COMPANY, d/b/a The Commercial News *et al.*, Defendants and Third–Party Plaintiffs-Appellants (McDowell Construction Company, Defendant; George R. Hall, Inc., Third–Party Defendant-Appellee).

Fourth District  No. 4—87—0420

Opinion filed February 3, 1988.—Rehearing denied April 6, 1988.

Sebat, Swanson, Banks, Garman & Townsley, of Danville (Robert J. Banks, Jr., of counsel), for appellants.

James C. Kearns and Michael E. Raub, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Northwestern Publishing Company, defendant–third-party plaintiff, appeals an order granting George R. Hall, Inc. (Hall), third-party defendant, summary judgment. Northwestern Publishing Company argues: (1) a direct settlement between an employer third-party defendant and his employee is not in good faith; thus, does not release the employer from third-party liability pursuant to the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*); (2) the trial court erred in finding no justiciable cause of action remained concerning the express indemnity provision after the settlement; and (3) the Contribution Act does not abolish implied indemnity in situations such as the instant case.

We reverse and remand.

In July 1982, Northwestern Publishing Company, d/b/a the Commercial News and Gannett Company, Inc. (Commercial News), contracted with Hall, a contractor, for the installation of several printing presses at the Commercial News plant in Danville. As a part of the general terms and conditions of the contract between Hall and Commercial News, Hall agreed

> "to indemnify, defend and hold harmless the Owner on account of property damage, property liability or personal injuries, including death, due solely to any act or the admission [*sic*] of any act, negligent or otherwise, by Hall, Hall's subcontractors, Hall's employees and/or agents."

In order to install the presses, a temporary entrance was made into the building. To secure the opening, Hall installed doors. Hobart Dixon, plaintiff, was planing the top of the door while standing on a scaffold erected by Hall. While he was sawing the top of a door, the boards of the scaffold slipped. Dixon fell and was injured. Dixon filed an application for adjustment of claim, seeking benefits pursuant to the Workers' Compensation Act. (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) On February 7, 1983, Dixon filed a complaint against Commercial News, alleging Commercial News had wilfully violated

the Structural Work Act. Ill. Rev. Stat. 1983, ch. 48, pars. 60 through 69.

On March 19, 1984, Commercial News filed a three-count, third-party complaint against Hall. In count I, Commercial News sought indemnification based upon express indemnity provisions. In count II, Commercial News sought indemnity on an active-passive negligence theory. In count III, Commercial News alleged it was entitled to contribution pursuant to the Contribution Act. Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*

In August and September of 1986, Hall and Dixon entered into a settlement in his workers' compensation claim. Dixon executed a release and agreement to indemnify Hall. Dixon received $110,000 in addition to the amount he had been paid as benefits through the Workers' Compensation Act. The settlement was approved by the Industrial Commission. The settlement terms stated that Hall agreed to pay Dixon $110,000 as full settlement of all claims arising out of the injury. Dixon, for the payment and a waiver of the workers' compensation lien to the extent of $70,000, agreed to indemnify Hall from any claim, judgment, or demand in any action or suit brought against it because of the accident. Further, Dixon agreed that should he obtain any judgment against Commercial News and Commercial News obtain contribution, indemnity, or any judgment against Hall, Dixon would not execute the portion of his judgment for which Hall would be responsible.

Hall filed a motion for summary judgment on January 21, 1987. The trial court granted the motion. The court had previously granted, without objection, summary judgment on the implied-indemnity provision. In a letter to the parties, the court stated the express indemnity provision was valid under Illinois law. However, Dixon agreed not to execute any judgment against Commercial News which would require contribution or indemnity from Hall. Therefore, the court found no justiciable controversy existed as to count I.

As to count III, the court discussed the purpose of the Contribution Act, noted factors used in determining good faith, noted that the court may determine good faith without a separate hearing, and determined Hall could avail itself of the discharge provision of the Contribution Act.

Section 2 of the Contribution Act states:

> "Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among

them, even though judgment has not been entered against any or all of them.

***

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." Ill. Rev. Stat. 1985, ch. 70, par. 302.

Initially, Commercial News argues that since Hall did not have a legal liability to compensate Dixon, outside of the Workers' Compensation Act, the settlement lacked consideration. Thus, it was not a good-faith settlement.

The purpose of the Contribution Act is to encourage settlements. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) In *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367, plaintiff was injured when he fell from a roof at Amsted. He sued Amsted pursuant to the Structural Work Act. Amsted filed a third-party complaint seeking implied indemnity and contribution from plaintiff's employer. The employer and plaintiff entered a settlement conditioned upon dismissal of the third-party action. In the settlement, plaintiff released his employer from all liability in tort in exchange for a waiver of the workers' compensation lien and an additional payment. The trial court dismissed the third-party action against the employer pursuant to section 2(d) of the Contribution Act. (Ill. Rev. Stat. 1981, ch. 70, par. 302(d).) On appeal, the court found the implied-indemnity count should not have been dismissed. The appellate court also held that the settlement was not in good faith for purposes of the Contribution Act because the employee had no rights outside of the Workers' Compensation Act which he could relinquish in exchange for the lien waiver and cash payment.

Commercial News asks this court to rely on *LeMaster* and find no consideration existed in the instant case for the settlement between Hall and Dixon. It asserts Dixon did not have any action to relinquish, and Hall was not liable to Dixon. However, several cases have dimin-

ished the precedential effect of *LeMaster*. In *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382, the supreme court held an employer's immunity from suit by his employee did not bar an action for contribution by a third-party against the employer. The employer argued it was "not subject to liability in tort" for purposes of the Contribution Act as a result of the exclusive remedy provision of the Workers' Compensation Act. The supreme court recognized that many jurisdictions do not permit contribution actions against employers who are subject to workers' compensation.

However, it felt the intent of the legislature in enacting the statute in Illinois was to reach anyone who was culpable for an injury, regardless of an immunity from direct court action provided by a special defense or privilege. The court in *Doyle* found the Workers' Compensation Act provided an employer with an affirmative defense to an employee's tort action against it. The affirmative defense could be waived if not asserted by the employer at trial. (See also *Vickrey v. Caterpillar Tractor Co.* (1986), 146 Ill. App. 3d 1023, 497 N.E.2d 814; *Walker v. Midwest Emery Freight Systems* (1983), 119 Ill. App. 3d 640, 461 N.E.2d 1373.) Therefore, the potential for tort liability exists until the defense is established. The court noted that liability is determined at the time the injury occurs.

In *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373, a products liability action, the supreme court found a good-faith settlement had been reached. Ballweg was a passenger on Phillip Henrici's sailboat, which hit a power line over Lake Springfield. Ballweg's estate sued the manufacturer, seller, and designer of the boat. He settled with the city and Henrici. The city and Henrici were third-party defendants in a counterclaim brought by the manufacturers and sellers of the product. The third-party plaintiffs, manufacturers of the boat, argued the settlement lacked consideration and therefore was in bad faith because the statute of limitations had run on the direct action prior to the settlement.

The supreme court noted the purpose of the Contribution Act. It then stated:

> "Keeping this purpose in mind, we must determine whether the settlement was made in good faith. Admittedly, the plaintiff's cause of action against Henrici *could* have been barred by the statute of limitations at the time the settlement was entered into *had* such a defense been raised. However, as we stated in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10-11, 'the potential for tort liability exists until the defense is established.' Since the statute had not been raised, Henrici was still poten-

tially liable, and therefore consideration was given by the plaintiff for the settlement." (Emphasis in original.) 114 Ill. 2d at 122, 499 N.E.2d at 1380.

In *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 498 N.E.2d 690, the court found a settlement between an employee, his employer as third-party defendant, and one of two other defendants was in good faith and released the settling parties from liability for further contribution. The employer, however, did not settle directly with the employee. The *Doellman* court distinguished *LeMaster*, noting its determination that the employer was not liable in tort to the employee had been rejected by the *Doyle* court. Consideration sufficient to support a finding of good faith has also been found in parent-child immunity cases. See generally *Bryant v. Perry* (1986), 154 Ill. App. 3d 790, 504 N.E.2d 1245.

■ Commercial News asserts *Ballweg* supports its position that where no liability exists between the settling party and the plaintiff, no consideration exists for the settlement. It then asserts that Hall did not have any legal liability to Dixon in this case. We agree that where the third-party defendant is not liable in tort to the plaintiff, he is not responsible for contribution. (See *Jodelis v. Harris* (1987), 119 Ill. 2d 482, 484 (interpreting the Contribution Act and its relation to the Dramshop Act).) However, the immunity from suit provided by the Workers' Compensation Act for the employer is an affirmative defense. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Vickrey v. Caterpillar Tractor Co.* (1986), 146 Ill. App. 3d 1023, 497 N.E.2d 814.) Therefore, the employer is potentially liable in tort for purposes of the Contribution Act. *Ballweg* states that where an affirmative defense potentially bars the suit between the settling parties, sufficient consideration exists to support a good-faith settlement for purposes of the Contribution Act. Commercial News urges this court to discard the *Doyle* and *Ballweg* decisions and treat the affirmative defense presented here differently.

We believe the reasoning of *Ballweg* and *Doyle* and their holdings apply in the instant case. The employer remained potentially liable to his employee until he raised and proved a workers' compensation payment as a defense. Therefore, sufficient consideration existed for the settlement to be considered in good faith.

■ Commercial News argues the trial court failed to make an adequate good-faith finding, urging this court to remand for a hearing on the issue of good faith. The Contribution Act does not define good faith or state what type of proceeding should occur prior to a determination that a settlement has been entered in good faith. The matter is

largely left to the discretion of the trial court. (*Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581.) However, in *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, this court noted that if a party requests a hearing, the court is required to hold one.

Here, the issue of good faith in the settlement was implicit in the motion to dismiss based on a good-faith settlement under the Contribution Act. Commercial News did not request an evidentiary hearing below. The trial judge's letter to the parties indicated that he considered the question of good faith. By finding Hall was entitled to the benefits of the Contribution Act, he determined the settlement was in good faith. We find no reason to upset this determination.

■ Commercial News next argues the settlement in the instant case is in bad faith because its liability is essentially vicarious, Hall will be removed from the lawsuit by the dismissal, and the jury, thus, will not have a chance to apportion damages.

Liability under the Structural Work Act is not totally vicarious liability. A plaintiff must establish defendant-owner was in charge of the construction and wilfully violated the provisions of the statute. (*Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 418 N.E.2d 822; Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69.) A settlement is not considered made in bad faith simply because its purpose is to eliminate third-party liability. (*Foss Alaska Line, Inc. v. Northland Services, Inc.* (Alaska 1986), 724 P.2d 523, 526.) The policy in Illinois is to encourage settlements. Engrafting a restriction on the right to settle directly with a plaintiff would restrict this policy, and we decline to do so.

■ Next, Commercial News argues the Contribution Act does not eliminate express indemnity provisions and the court erred in granting summary judgment on the express indemnity count. We agree. In their contract, Hall agreed to indemnify Commercial News for any liability arising out of Hall's negligence. Such provisions do not conflict with State statutes, which prohibit an indemnity provision holding a person harmless from his own negligence. (Ill. Rev. Stat. 1985, ch. 29, par. 61.) In *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 495 N.E.2d 496, the court held that active-passive (implied) indemnity is no longer a viable doctrine after passage of the Contribution Act. The supreme court specifically stated that its decision was not meant to affect situations of wholly vicarious liability or situations where indemnity is sought based upon an express agreement. See also *Stephan v. Sears, Roebuck & Co.* (1986), 147 Ill. App. 3d 833, 837, 498 N.E.2d 687, 690.

Express indemnity, which is based upon a contractual arrangement, is not affected by the Contribution Act. The settlement agreement between Hall and Dixon in the instant case was that Dixon would not execute or seek to enforce any judgment for which Hall would be liable in indemnity or contribution to Commercial News. The trial court found that since Dixon could not execute any judgment against Commercial News which would cause indemnification, no justiciable issue existed on Commercial News' express indemnity action against Hall.

An issue is moot when no actual controversy, interests, or rights of the parties exist or where events occur which make it impossible for the court to grant effectual relief. *Wheatley v. Board of Education* (1984), 99 Ill. 2d 481, 459 N.E.2d 1364; *First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 233-34, 456 N.E.2d 7, 10.

■ In the instant case, although the settlement between Hall and Dixon precludes execution of an indemnity award in favor of Commercial News, it does not establish what percentage of plaintiff's award should be attributed to Hall's negligence. Commercial News could be found responsible for the total amount of damage to plaintiff. We note that if the court upholds the dismissal of the indemnity count against Hall, the express indemnity provision will be held meaningless. A jury will never assess what portion of the total amount should be attributed to Hall, and therefore what portion of the damages which plaintiff has agreed not to collect. Commercial News could be held responsible for the totality of the damages awarded plaintiff despite an express contractual agreement to the contrary. Because of the express indemnity provision, a justiciable issue on the percentage of liability exists. Therefore, the trial court erred in granting Hall summary judgment on this issue.

■ Commercial News argues the Contribution Act does not abolish implied indemnity based solely on vicarious liability. It then asserts that its liability is solely vicarious. As we have previously noted, liability under the Structural Work Act is not wholly vicarious. In *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 495 N.E.2d 496, the supreme court held that active-passive indemnity is no longer a viable doctrine. The trial court correctly granted summary judgment on this issue.

For the above reasons, we reverse the trial court and remand for further proceedings consistent with this disposition.

Reversed and remanded.

GREEN, P.J., and SPITZ, J., concur.